IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

PENNSYLVANIA NATIONAL MUTUAL )
CASUALTY INSURANCE COMPANY, )
)
    Plaintiff, )
)
v. )   CIVIL ACTION NO. 1:10-cv-528-WHA
)
ALL STATE CONSTRUCTION, INC.; )
JCI GENERAL CONTRACTORS, INC.; )
ALL STATE/JCI A JOINT VENTURE; )
CHRIS PLUMMER; ROBERT and )
SONYA GARRETT )
)
    Defendants. )

## COMPLAINT FOR DECLARATORY JUDGMENT

Comes Now Pennsylvania National Mutual Casualty Insurance Company ("Penn National") and hereby files this action for declaratory relief pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C.A. § 2201, *et seq.* and 28 U.S.C.A. §§ 1332, 1333 and states as follows:

### PARTIES

1.    Penn National is a corporation incorporated under the laws of Pennsylvania, with its principal place of business in Pennsylvania.

2.    All State Construction, Inc. ("All State"), is a corporation organized under the laws of Florida with its principal place of business in Florida.

3. Chris Plummer is an individual and a resident of Georgia.

4. JCI General Contractors, Inc. ("JCI"), is a corporation organized under the laws of Georgia with its principal place of business in Georgia.

5. All State/JCI a Joint Venture (the "Joint Venture") is a joint venture created by All State and JCI and, for diversity purposes, is considered a resident of Georgia and Florida.[1]

6. Robert and Sonya Garrett (collectively the "Garretts") are husband and wife residing in Alabama.

## JURISDICTION AND VENUE

7. The Court has jurisdiction over this matter under 28 U.S.C.A. § 1332 because the amount in controversy exceeds $75,000.00, exclusive of costs and interest, and because there exists complete diversity of citizenship among the Plaintiff and the Defendants. Venue of this suit is appropriate in the United States District Court for the Middle District of Alabama pursuant to 28 U.S.C.A. § 1391 because Penn National does business in the Middle District of Alabama, the underlying case of *Robert and Sonya Garrett v. All State Construction, Inc.*, Case No. 2:10-CV-23-WHA (M.D. Ala.)(the "*Garrett* Litigation"), is pending in the Middle District of Alabama, and

---

[1] For purposes of diversity, the residency of a joint venture is that of its members. See, *Stuart v. Al Johnson Const. Co.*, 236 F.Supp. 126, 128 (W.D. Pa. 1964); *Triangle Elect. Supply Co. v. Mojave Elect. Co.*, 234 F.Supp. 293 (W.D. Ms. 1964). In this case, All State and JCI were the members of the Joint Venture. As shown above, All State is considered a resident of Florida and JCI a resident of Georgia.

Robert and Sonya Garrett reside in Houston County, Alabama, which is in the Middle District of Alabama.

## FACTUAL BACKGROUND

8.  This is a declaratory judgment action regarding Penn National's duty to defend All State, JCI, the Joint Venture and Plummer in the *Garrett* Litigation. Robert Garrett was an employee and site foreman of Penn National's insured, Circle City Glass, Inc. ("Circle City Glass") which was a subcontractor for the Joint Venture at the new Bainbridge High School construction site (the "Bainbridge High School project").

### The All State/JCI Joint Venture

9.  All State and JCI formed a joint venture known as the "All State/JCI, a Joint Venture" for the purpose of bidding on the $46.5 million construction of the new Bainbridge High School in Bainbridge, Georgia. The Joint Venture was awarded the contract for the Bainbridge High School project and on February 19, 2007, entered into a Standard Form Agreement Between Owner and Contractor with the Decatur County Board of Education.

### The Circle City Glass Subcontract

10.  On July 10, 2007, Circle City Glass entered into a Standard Form Construction Subcontract ("Subcontract") with "Allstate /JCI, A Joint Venture" to install windows at the Bainbridge High School project. The Joint Venture was

3

designated in the Subcontract as the "Contractor." The Subcontract provided that it would be governed by the laws of the state where the project was located (Georgia) and that Circle City Glass would name "Allstate /JCI, A Joint Venture" as an additional insured on its liability policy. The Subcontract included the following indemnification provision:

### INDEMNIFICATION

12.1 Indemnification.  To the fullest extent permitted by law, the Subcontractor shall fully indemnify, defend and hold harmless the Owner, Contractor [Allstate /JCI, A Joint Venture], Architect, Architect's consultants and agents and all employees and agents of any of them, from and against any and all suits, claims, actions, judgment, damages, losses and expenses (including but not limited to attorney's fees and litigation expenses) arising directly or indirectly out of, or in connection with, the obligations herein undertaken, or resulting out of, or in connection with operations performed by or conducted by (or in the work area of) the Subcontractor, the Subcontractor's subcontractors, anyone directly or indirectly employed by them, or anyone for whose acts and omissions they may be liable provided that such claim, loss, damages or expenses is attributable to bodily injury sickness, disease or death to third parties and employees of the contractor, subcontractor, or anyone directly or indirectly employed by them or anyone for whose acts they may be liable.  To the fullest extent provided by law, all of Subcontractor's indemnity obligations agreed to herein shall be binding on subcontractor without regard to whether such claim, damage, loss or expense is caused in whole or in part by a party indemnified hereunder.  Such obligations shall negate, abridge or otherwise reduce other rights or obligations of indemnity or agreements to procure insurance which otherwise exist as to a party or person described in this paragraph.  Subcontractor will purchase the insurance required elsewhere in this Subcontract and name Owner, Contractor and the Architect as additional insureds on a primary and non-contributory basis over any other insurance which may be available to the Owner, Contractor, and the Architect to fully insure the

indemnity obligations made herein and in any other portion of this Subcontract.

(emphasis added).

## The Policy

11. Circle City Glass was insured under a Penn National Business Liability Policy for the period of June 14, 2008, through June 14, 2009 (the "Policy").[2] The terms of the Policy included the following:

    **A.    Coverages**

        **1.    Business Liability**

           **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" ... to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for :bodily injury" ... to which this insurance does not apply.
           ...

                \*\*\*

           **b.**    This insurance applies to "bodily injury" and "property damage" only if:

                **(1)**    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;" ...

                \*\*\*

The policy defined "insured contract" and "occurrence" as follows:

**SECTION V – DEFINITIONS**

    **8.**    "Insured contract" means:

---

[2] This is the relevant policy period because Robert Garrett was allegedly injured on February 27, 2009.

5

\*\*\*

    **f.**    That part of any other contractor agreement pertaining to your business ... under which you assume the tort liability of another to pay for "bodily injury" ... to a third person or organization.

\*\*\*

    **12.**    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

Although the policy does not define the term "accident," the Alabama Supreme Court has held that with respect to insurance, "accident" means "[a]n unintended and unforeseen injurious occurrence; something that does not occur in the usual course of events or that could be reasonably anticipated." *Hartford Cas. Ins. Co. v. Merchants & Farmers Bank*, 928 So.2d 1006, 1010 (Ala. 2005).

The policy also contained the following Exclusions:

**B.**    <u>**Exclusions**</u>

    **1.**    **Applicable to Business Liability Coverage**

This insurance does not apply to:

\*\*\*

    **b.**    **Contractual Liability**

"Bodily Injury" ... for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

\*\*\*

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent

6

to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

> (a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and
>
> (b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding to which this insurance applies are alleged.

\*\*\*

e. **<u>Employer's Liability</u>**

"Bodily Injury" to:

(1) An "employee" of the insured arising out of and in the course of:

    (a) Employment by the insured; or
    (b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

(a) Whether the insured may be liable as an employer or in any other capacity; and

(b) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**<u>This exclusion does not apply to liability assumed by the insured under an "insured contract."</u>**

(emphasis added)

\*\*\*

7

The Policy defined who was insured under its terms as follows:

**C.  Who Is An Insured**

1. If you are designated in the Declarations as:[3]

    \*\*\*

    d.  An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. ...

2. Each of the following is also an insured:

    a.  Your employees. ... However, none of these "employees" is an insured for:

        (1) "Bodily injury" or "personal injury"

            (a) ... a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business.

            (b) To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of Paragraph (1)(a) above:

            (c) For which there is any obligation to share damages with or repay someone else who must pay damages of the injury described in Paragraph (1)(a) above:

    \*\*\*

    **No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.**

    (emphasis added)

An endorsement to the policy provided "WHO IS AN INSURED" to include the following:

---

[3] The Policy provided that the term "you" or "your" refers to the named insured shown on the Declarations page and the term "insured" means any person or organization qualifying as an "insured" under this section.

8

### III.   WHO IS AN INSURED

\*\*\*

B.   **Broad Form Named Insured**

1.   Section C.2. WHO IS AN INSURED is amended to add:

> d.   Any organization or subsidiary thereof, other than a partnership, joint venture, or limited liability corporation, which is a legally incorporated entity of which you own a financial interest of more than 50 percent of the voting stock on the effective date of this endorsement.

\*\*\*

C.   **Newly Formed or Acquired Organizations**

1.   Section C.2. WHO IS AN INSURED is amended to add:

> e.   Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a named insured if there is no other similar insurance available to that organization.

The Endorsement also contained an Automatic Additional Insured provision but that provision was limited to managers, lessors, mortgagees, assignees or receivers of premises or lessors of leased equipment, none of which would apply in this case. The Policy likewise included a Separation of Insureds provision whereby the policy applies as if "each named insured were the only Named Insured" and "separately to each insured against whom a claim is made or as 'suit' is brought."

### The Garrett Accident

12.   On February 27, 2009, Garrett was injured on the job site when he fell approximately 12 feet from a "Baker Scaffolding" which was a portable scaffolding

with wheels and locking casters. The accident occurred when Garrett attempted to caulk a window and had "borrowed" the Baker Scaffolding from another subcontractor, Nelson, so that he could reach the window. Garrett had to stretch to reach the window from the scaffolding and as he did so the scaffolding tipped over and Garrett fell 12 feet to the floor. As a result of his fall, Robert Garrett claims that he suffered severe and permanent injuries. The Garretts have alleged that Allstate and JCI "were involved in a joint venture in which the two companies were acting in concert as the General Contractor to perform contracting, construction and/or repair and/or modification services on the new Bainbridge High School project, located in the City of Bainbridge, Georgia." (*Garrett* Litigation, Doc. 5, Amended Complaint ¶ 7). On January 18, 2010, the Garrett's amended their Complaint to clarify federal jurisdiction and alleged claims of failure to provide a safe work place including safe equipment, that Nelson was the sheetrock subcontractor and failed to provide safe scaffolding, that Plummer was the job site superintendent and negligently failed to inspect the scaffolding. Sonya Garrett has filed a loss of consortium claim. The plaintiffs seek compensatory and punitive damages in excess of $75,000.

**All State, JCI and Plummer's Claim for a Defense in the *Garrett* Litigation**

13.     On February 10, 2010, counsel for All State, JCI and Plummer made a demand to Circle City Glass and Flowers Insurance Agency, LLC ("Flowers"), an

independent insurance broker representing Circle City Glass, for a defense and indemnity in the underlying case. On February 11, 2010, Flowers, faxed Penn National an Acord General Liability Notice of Claim ("Notice of Claim"). The Notice of Claim stated that the date of loss was February 27, 2009, but that the date of coverage was June 14, 2009 through June 14, 2010. However, Penn National also insured Circle City Glass from June 14, 2008, through June 14, 2009.

**Neither JCI nor the Joint Venture Were Insureds Under the Penn National Policy.**

14.    Penn National had provided commercial liability insurance to Circle City Glass since 2003. Flowers had been the insurance broker for Circle City Glass and would submit applications on behalf of Circle City Glass to Penn National and make any requested changes to coverage. With respect to additional insureds, Flowers would request in writing that Penn National add an additional insured for which there would be an underwriting review and additional premium. <u>Flowers did not have the authority to add additional insureds to a policy</u>. On July 10, 2007, Circle City Glass entered into the Subcontract requiring it to name the Joint Venture as an additional insured to its commercial liability policy. However, neither Flowers nor Circle City Glass ever requested that Penn National add the Joint Venture or JCI as additional insureds.

11

### A. The 2007-08 Policy Period.

On June 19, 2007, Flowers prepared an Acord Certificate of Liability Insurance ("Certificate of Insurance") stating that "Allstate/JCI, a joint venture is hereby added as an additional insured in respect to the General Liability and Auto Liability. JOB: BAINBRIDGE HIGH SCHOOL, BAINBRIDGE, GEORGIA." The Certificate of Insurance contained the following disclaimer:

> **THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMAITION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER, THIS CERTIFICATE DOES NOT AMMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.**

(emphasis original).

Flowers provided the Joint Venture with a copy of this Certificate of Insurance but never forwarded a copy to Penn National nor did Flowers otherwise request that All State, JCI or the Joint Venture be named as additional insureds to the 2007-08 Policy.[4] As a result, there was no endorsement to the 2007-08 Policy naming All State, JCI or the Joint Venture as additional insureds.

### B. The 2008-09 Policy Period.

The 2008-09 policy period is the relevant time frame because Garrett's accident occurred in February 2009. On June 3, 2008, Flowers submitted a Commercial

---

[4] An endorsement to the 2007-2008 Penn National policy added CB Richard Ellis, Corp., as an additional insured, effective 9-21-07, and named Hollis & Spann, Inc. and Lewis Construction, LLC as additional insureds at the request of Flowers but not All State, JCI or the Joint Venture because there was never any request to include those entities as

Insurance Application for Circle City Glass to Penn National seeking to renew coverage for the 2008-09 policy period.[5] In the General Liability section of the application, Flowers listed only Hollis & Spann as an additional insured and made no mention of All State, JCI or the Joint Venture. On February 18, 2009, Darlene Jordon at Flowers sent an email to Penn National attaching a Certificate of Insurance naming only "All State Construction, Inc." as an additional insured and requesting that only All State Construction, Inc. be named as an additional insured. <u>After underwriting review, Penn National issued an endorsement naming All State Construction, Inc. as an additional insured effective February 19, 2009, but not JCI or "Allstate/JCI a Joint Venture."</u>

## THE AMOUNT IN CONTROVERSY EXCEEDS $75,000

15. The amount in controversy in this declaratory judgment action exceeds the jurisdictional amount of $75,000. In a declaratory judgment action, the amount in controversy is determined as follows:

> In a declaratory judgment action, the amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective. The plaintiff satisfies the amount in controversy requirement by claiming a sufficient sum in good faith. Where, as here, an insurer seeks a determination that it has no duty to defend a separate, underlying lawsuit, the court may take into account not only the recovery sought in

---

additional insureds. Flowers had a copy of this endorsement in its records.
[5] The application was for Circle City Glass, LLC but the insured named on the Policy declarations page was Circle City Glass, Inc. – not an LLC. In 2006 Flowers notified Penn National that Circle City Glass had changed its corporate structure from an LLC to an S corporation. Thus, the Policy was correctly issued.

13

the underlying suit, but also the pecuniary value of the [insurer's] obligation to defend the separate lawsuit.

*Owners Ins. Co. v. Bryant*, 2006 WL 50488 (M.D. Ga. 2006), citations omitted.

In this case, Penn National seeks a determination as to whether it has a duty to defend All State, JCI, Plummer or the Joint Venture in the *Garrett* Litigation. The policy at issue in this declaratory judgment action has a limit of $1 million per occurrence which may be considered in determining the amount in controversy where an insurer is seeking a determination of its duty to defend. See, *Coregis Ins. Co. v. McCollum*, 955 F.Supp. 120, 124 (M.D. Fla. 1997). As shown above, the Court may also consider the recovery sought in the underlying litigation as well as the costs of the insurer's duty to defend the insured in that action. *Owners Ins. Co. v. James*, 295 F.Supp.2d 1354, 1359 (N.D. Ga. 2003), citing *Stonewall Ins. v. Lopez*, 544 F.2d 198, 199 (5th Cir. 1976). The *Garrett* Litigation was filed in this Court wherein the plaintiffs specifically asserted that they were seeking in excess of $75,000 (*Garrett* Litigation, Doc. 5). Moreover, the reasonable costs of providing a defense to All State, JCI and Plummer would certainly exceed $75,000. As a result, the amount in controversy clearly exceeds $75,000.

## COUNT ONE: DECLARATORY JUDGMENT

16. Penn National re-alleges and incorporates paragraphs 1–15 as if set out fully herein.

17. All State, JCI, Plummer and the Joint Venture seek a defense from Penn National for claims made against them in the *Garrett* Litigation. Pursuant to the terms of the Policy, Penn National would only owe JCI and the Joint Venture a defense if they were insureds or additional insureds on the date Robert Garrett was injured, February 27, 2009. However, neither JCI nor the Joint Venture were ever named as insureds or additional insureds under the Policy and no other provision of the Policy would afford coverage to JCI or the Joint Venture.

18. Although All State was added as an additional insured eight (8) days before Garrett was injured, it was not insured "with respect to the conduct" of the Joint Venture because the Joint Venture was never made a named insured to the Policy. Because any liability All State may have in the *Garrett* Litigation arises out of its participation in an undisclosed joint venture, Penn National has no duty to defend it in the *Garrett* Litigation.

19. The Subcontract does not constitute an "insured contract" pursuant to the terms and conditions of the policy. Even if the Subcontract did constitute an "insured contract" as defined by the Policy, Penn National is not responsible for any defense costs or indemnity claim arising from the Subcontract as a result of the *Garrett* Litigation because any such claim would be based upon actions of an undisclosed joint venture for which "no person or organization" is insured.

**WHEREFORE,** Penn National seeks a declaration from this Court as follows:

A. That a bona fide justiciable controversy exists between the parties which should be resolved.

B. The relevant provisions of the subject Penn National Policy and all applicable amendments and endorsements thereto, are clear and unambiguous.

C. That there is no defense afforded under the Penn National policy to All State, JCI, the Joint Venture or Plummer for the claims made against them in the *Garrett* Litigation.

_____
Steve R. Burford
Attorney for Plaintiff Pennsylvania National
Mutual Casualty Insurance Company
**RITCHEY, SIMPSON,**
**GLICK & BURFORD, PLLC**
The Mountain Brook Center
2700 Highway 280, Suite 203W
Birmingham, Alabama 35223
Ph:   (205) 876-1600
Fax:  (205) 876-1616
Email: srburford@ritcheysimpson.com

**PLEASE SERVE THIS COMPLAINT ON THE**
**DEFENDANT BY CERTIFIED MAIL AS FOLLOWS:**

Robert Garrett
4796 State Line Road
Cottonwood, AL  36320

Sonya Garrett
4796 State Line Road
Cottonwood, AL  36320

All State/JCI, A Joint Venture
5718 Tower Road
Tallahassee, FL  32303

All State Construction, Inc.
C/O W. E. Weldon
Registered Agent
5718 Tower Road
Tallahassee, FL  32303

Jci General Contractors, Inc.
C/O Lynn Jones, Registered Agent
2535 GA Highway 37 W
Moultrie, GA  31768

Chris Plummer
Superintendent
P. O. Box 519
Moultrie, GA  31776