**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No.  1:10cv528-WHA |
| ALL STATE CONSTRUCTION, INC.; JCI GENERAL CONTRACTORS, INC.; ALL STATE/JCI A JOINT VENTURE; CHRIS PLUMMER; ROBERT and SONYA GARRETT, | ) ) ) ) ) ) | (Wo) |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

This case is before the court on a Motion for Summary Judgment (Doc. #24), filed by Plaintiff Pennsylvania National Mutual Casualty Insurance Company ("Penn National") on November 5, 2010, and a Motion to Strike (Doc. #34) filed by Penn National on December 17, 2010.

Penn National filed a Complaint for Declaratory Judgment in this case on June 18, 2010, seeking declaratory relief pursuant to Rule 57 of the Federal Rules of Civil Procedure, 28 U.S.C. § 2201, and 28 U.S.C. §§ 1332, 1333.  Penn National seeks a declaration regarding its duty to defend All State Construction, Inc. ("All State"); JCI General Contractors, Inc. ("JCI"); All State/JCI Joint Venture ("the Joint Venture"); and Chris Plummer ("Plummer") in *Robert and Sonya Garrett v. All State Construction, Inc.*, *et al.*, Case No. 2:10cv23-WHA (M.D. Ala.).

All Defendants answered the Complaint. All State, JCI, the Joint Venture, and Plummer (referred to jointly as "Defendants" for purposes of determining this motion) also filed a Counterclaim for Declaratory Judgment Breach of Contract and Bad Faith.[1]

Penn National has moved for summary judgment, stating that it has no duty to defend under the policy at issue, and that it is entitled to judgment as a matter of law on the counterclaims.

The court has jurisdiction by virtue of diversity of citizenship. *See* 28 U.S.C. § 1332.

For the reasons to be discussed, the Motion for Summary Judgment is due to be GRANTED.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion," relying on submissions "which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. Once the moving party has met its burden, the nonmoving party must "go beyond the pleadings" and show that there is a genuine issue for trial. *Id.* at 324.

Both the party "asserting that a fact cannot be," and a party asserting that a fact is genuinely disputed, must support their assertions by "citing to particular parts of materials in the

---

[1] Defendants Robert and Sonya Garrett have not filed a response in opposition to the Motion for Summary Judgment, and, for the sake of simplicity, are not included in the term "Defendants."

record," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56 (c)(1)(A),(B). Acceptable materials under Rule 56(c)(1)(A) include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."

To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

### III. FACTS

The submissions of the parties establish the following facts, construed in a light most favorable to the non-movants:

Penn National is a corporation incorporated under the laws of Pennsylvania with its principal place of business in Pennsylvania. All State is a Florida corporation with its principal place of business in Florida. Plummer, an employee of All State, is a resident of Georgia. JCI

is a Georgia corporation with its principal place of business in Georgia. Robert and Sonya Garrett are citizens of Alabama.

The facts of this case arise from an accident involving Robert Garrett ("Garrett") which occurred on February 27, 2009. Garrett was an employee of Circle City Glass, Inc. ("Circle City"). Circle City had entered into a sub-contract with "Allstate/JCI, a Joint Venture," to install windows at a Bainbridge High School project in Georgia, for which project the Joint Venture was the general contractor. Garrett has alleged in his separate lawsuit that All State and JCI are liable to him for injuries suffered during performance of his work on their Joint Venture project at the Bainbridge High School.

At the time of the injury to Garrett, Circle City was insured under a business liability policy issued by Penn National which covered occurrences from June 14, 2008 to June 14, 2009. The policy was purchased through Flowers Insurance Agency ("Flowers"), and was issued by Penn National pursuant to Circle City's application showing Circle City as the named insured and Hollis & Spann, Inc. as the only additional insured. Pl. Ex. E.

The policy issued by Penn National to Circle City provides coverage for business liability of "the insured." The policy defines "insured" as an individual or various business entities designated in the Declarations of the policy. Pl. Ex. A, p.14. Those business entities may include a joint venture and an organization other than a partnership, joint venture or limited liability company. *Id.* The policy also provides as follows:

> No person or organization is an insured with the respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

*Id.* at p.15. An endorsement to the policy adds that an insured is any newly acquired organization "other than a partnership, joint venture or limited liability company." *Id.* at p.4.

For an entity or organization to be added to the policy, and thereby considered an additional insured under the policy, the certificates of insurance state that the policy must be endorsed by Penn National. *See* Pl. Ex. C., p.7.

The evidence presented to the court establishes that on February 18, 2009, Flowers requested on Circle City's behalf that All State, with a Tallahassee, Florida address, be added as an insured to Circle City's policy, and Penn National issued an endorsement for All State. A certificate of insurance then was issued by Flowers to All State with the notation, "Job: Bainbridge High School." Def. Ex. 4. No request was made to have either JCI or the Joint Venture added as an insured.

During the preceding policy year, June 14, 2007 to June 14, 2008, Circle City had also been covered for general liability by a Penn National policy. On six occasions during that policy year Flowers issued Certificates of Liability Insurance showing, "Allstate/JCI, a joint venture," with a Brainbridge, Georgia address, as an additional insured under that policy, noting, "Job: Bainbridge High School, Bainbridge, Georgia." Each of these Certificates bore the following notice:

> IMPORTANT
> If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

Def. Ex. 2. It is without dispute, however, that Penn National was never asked to endorse the policy to show the Joint Venture as an additional insured, and never did so. Pl. Ex. C.

5

Shane Sinquefield ("Sinquefield"), one of the owners of Flowers, acknowledged in his deposition that merely because Flowers sent a business a certificate of insurance did not mean that the business was an additional insured, because the additional insured had to be "accepted by the carrier." Def. Ex. 3. at page 78: 14-21.

All State made a claim under the Penn National policy for a defense and coverage in the *Garrett* case. It is undisputed that a representative of Penn National, Brent Moelker, left a telephone message for the attorney for the Defendants stating that a defense would be provided.[2] Within the hour, however, Moelker called again and spoke to the attorney directly to tell him that Penn National would have to investigate the claim further because the Joint Venture was not listed as an insured on the policy. *See* Aff. of Moelker, Pl. Exhibit O. Several weeks later, Moelker wrote a letter in which Penn National declined coverage under the policy. *Id.* and Def. Ex. J.

## IV. DISCUSSION

Penn National has moved for summary judgment on its request for a declaratory judgment, stating that the language of the policy is clear and unambiguous, and that under the plain language of its insurance policy, it has no duty to defend All State, JCI, the Joint Venture, or Plummer (hereinafter "the Defendants"), in the underlying case of *Robert and Sonya Garrett v. Allstate Const. Inc., et al.*, Case No. 1:10cv23-WHA.

The court agrees that the language of the policy is clear and unambiguous. As set forth above, the policy requires that business entities, including joint ventures, be designated on the

---

[2] Although Penn National admits that the message was left, Penn National has moved to strike the transcript of the message provided by the Defendants.

Declarations page of the policy to be considered insureds under the policy. To be added to the policy, an additional insured must be endorsed by Penn National. Of the Defendants in this case, only All State received an endorsement from Penn National. Even though All State was added to the policy, the policy does not cover conduct of a joint venture which is not listed in the Declarations. *See* Pl. Ex. A, p. 15. Therefore, under the plain language of the policy, endorsements, and certificates, there is no duty on the part of Penn National to defend any of the Defendants in this case in the *Garrett* matter. *See also Discover Prop. & Cas. Co. v. Lexington Ins. Co.*, 664 F. Supp. 2d 1296, 1303 (S.D. Fla. 2006) (finding that insured engaged in an undesignated joint venture, where the policy required joint ventures to be designated, was not covered by the policy for injuries arising from the joint venture).

The Defendants do not dispute the plain language of the policy as outlined above. They do not point to any provisions as being ambiguous, or to any relevant policy provisions other than those cited by Penn National. And, they do not dispute that the *Garrett* case is based on acts committed in the course of the work being done by the Joint Venture, as general contractor for the Bainbridge High School. Instead, the Defendants argue that there is evidence which creates a question of fact which precludes summary judgment, including a transcript of the phone message left by Moelker, a Penn National representative, for the attorney for the Defendants; the testimony of Sinquefield that Penn National has a duty to defend all of the Defendants in the *Garrett* case; and evidence of certificates of insurance issued to the Defendants by Flowers.

As noted above, the transcribed voice mail message from Moelker indicated that Penn National would provide a defense to All State and JCI in the *Garrett* matter. In response to Penn National's Motion to Strike this evidence, the Defendants characterized the evidence as an

7

admission against interest, relying on *Universal Underwriters Ins. Co. v. Sherrill*, 544 So. 2d 923 (Ala. 1989).

In *Universal Underwriters Ins. Co.*, the Alabama Supreme Court affirmed a trial court's decision to admit evidence of an insurance underwriter's payment of medical claims, after a thorough examination and investigation of the claim, as an admission against interest. 544 So. 2d. at 925-26.  The court made clear, however, that the admission was only evidence and did not create coverage through estoppel.  *Id.* at 926.  The court relied on federal court cases which allowed for consideration evidence of payments, but which did not give conclusive effect to evidence of payments by an insurance company.  *Id.* (citing, among others, *Mut. Life Ins. Co. v. Frost*, 164 F.2d 542 (1st Cir. 1974)).  Significantly, in *Universal Underwriters,* the issue of coverage under the insurance policy involved  a question of fact as to the scope of permission granted by the insured to its employee, so that there was a fact issue as to which the evidence of payment by the insurance company was relevant.  *Id.* at 925.

In the instant case, even assuming the evidence of the transcript is admissible, there is no relevant material fact admitted by Moelker.  Moelker's statement that a defense would be provided is not conclusive and does not create coverage under the case law cited.  Instead, Moelker's opinion was, at best, an interpretation of the policy, which was promptly withdrawn.

Interpretation of an unambiguous insurance policy, such as the one in this case, is a legal question for the court.  *Nationwide Ins. Co. v. Rhodes*, 870 So. 2d 695, 696-97 (Ala. 2003) (stating that if the terms of a contract are unambiguous, the construction and its legal effect are questions of law for the court).  Therefore, even if admissible, the evidence of Moelker's message has no effect on the plain language of the insurance contract.

8

Similarly, Sinquefield's opinion that Penn National owes a duty to defend does not alter the plain language of the policy. The Defendants acknowledge that only All State, and not JCI or the Joint Venture, was issued an endorsement by Penn National. Sinquefield has offered the opinion that there was a duty to defend all parties to the Joint Venture because All State was added as an insured by endorsement by Penn National, and the Bainbridge High School project was referenced in All State's certificate. In response to the Motion to Strike, the Defendants contend that Sinquefield's testimony is admissible expert opinion.

Interpretation of a contract is a question of law. *See Nationwide Ins. Co. v. Rhodes*, 870 So. 2d 695, 696 (Ala. 2003) (stating that if the terms of a contract are unambiguous, the construction and its legal effect are questions of law for the court). Therefore, "[a]bsent a finding of ambiguity, expert testimony regarding the interpretation of an insurance policy is clearly not admissible." *Cincinnati Ins. Co. v. Washer & Refrigeration Supply Co.*, No. 07-0330-CG-B, 2008 WL 4600560 at *9 (S.D. Ala. Aug. 22, 2008). Even if ambiguity exists, an expert's opinion regarding contract interpretation is only allowed in limited circumstances. *See e.g. TCP Industries, Inc. v. Uniroyal, Inc.*, 661 F.2d 542, 549 (6th Cir.1981) ("Absent any need to clarify or define terms of art, science, or trade, expert opinion testimony to interpret contract language is inadmissible."). An expert is generally not allowed to offer legal conclusions. *See Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1112 n. 8 (11th Cir. 2005).

The policy provisions at issue in this case are unambiguous, so expert opinion as to the interpretation of the policy is not admissible. Moreover, even if this were a case in which a qualified expert would be allowed to offer an opinion, Sinquefield is not qualified to offer an

9

opinion, because he states in his deposition that he does not have a law degree, and has not been educated on the difference between a joint venture and a corporation. Sinquefield Dep. at 89: 2-10. The court finds that the Motion to Strike is due to be GRANTED as to Sinquefield's opinion as to coverage, and the court will not consider that evidence.

The Defendants also contend that Sinquefield's statements bind Penn National to his interpretation of the policy. Sinquefield states in his deposition, however, that he had authority to bind Penn National if he acted within the guidelines of Penn National. Sinquefield Dep. at 64: 19-23. He agreed that he did not have the authority to issue an endorsement, and that Penn National would have to accept an endorsement for an additional insured to be named. *Id.* at page 71-2. Therefore, the court cannot conclude that Sinquefield's statements or actions with regard to the certificates are binding on Penn National.

With respect to the evidence of the previous year's certificates of insurance themselves, Penn National points out, and the Defendants do not dispute, that the certificates state that if the certificate holder is an additional insured, the policy must be endorsed, and that the certificate does not confer rights in lieu of an endorsement. Pl. Ex. F, p.2. Sinquefield acknowledged in his deposition that even if Flowers issued a certificate, an additional insured had to be "accepted by the carrier." Sinquefield Dep. at 78: 14-21. Penn National never accepted the Joint Venture as an additional insured the year before the accident, and the certificate issued by Flowers that year had no effect. The All State endorsement, issued shortly before the accident occurred, while it may include a reference to the Bainbridge High School project, does not refer to a joint venture or to JCI. The court concludes, therefore, that the certificates issued by Flowers do not create a question of fact precluding summary judgment on the coverage issue in this case.

In short, under the plain language, the insurance policy of Circle City, pursuant to which All State has made a claim for coverage, provided that "[n]o person or organization is an insured with respect to the conduct of any current or past . . . joint venture . . . that is not shown as a Named Insured in the Declarations," neither the Joint Venture nor JCI was made an additional insured, and although All State was separately made an additional insured, it was not made an insured with respect to the Joint Venture from which the *Garrett* claim arose.  Summary judgment is, therefore, due to be GRANTED to Penn National on its claim.

Finally, Penn National has also moved for summary judgment on the Defendants' counterclaims for breach of contract and bad faith.[3]  Because the court has concluded that Penn National is entitled to summary judgment on its request for a declaration that it owes no duty to defend the Defendants under the insurance policy, summary judgment is also due on the counterclaims.[4]  *See State Farm Fire & Casualty v. Slade*, 747 So. 2d 293, 304 (Ala. 1999) (stating a claim for bad faith requires a showing of breach of contract).

## V. CONCLUSION

For the reasons discussed, it is hereby ORDERED as follows:

1.  The Motion to Strike (Doc. #34) is DENIED as moot as to the transcribed phone call and GRANTED as to Sinquefield's opinion regarding the duty to defend.

---

[3] Although Penn National's brief concentrates on the bad faith claim, it references both counterclaims in its request for summary judgment.  Doc. #25 p. 21.

[4] The court also notes that, although the Defendants cite Sinquefield's deposition testimony that Penn National did not contact him about the case as its evidence that Penn National did not investigate the claim, Penn National has provided evidence that it in fact contacted a different representative of the Flowers agency with respect to the claim for coverage, and also contacted parties involved in the underlying case, and reviewed relevant documents.

11

    2.  The Motion for Summary Judgment (Doc. #24) is GRANTED.

A separate Judgment will be entered in accordance with this Memorandum Opinion and Order.

Done this 24th day of January, 2011.

                              /s/ W. Harold Albritton  
                              W.  HAROLD ALBRITTON  
                              SENIOR UNITED STATES DISTRICT JUDGE